**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

Erika I.,

          Plaintiff,

v.

Commissioner of Social Security
Administration,

          Defendant.

No. CV-24-00644-PHX-SHD

**ORDER**

Claimant Erika I. ("Claimant")[1] seeks review of the Social Security Administration Commissioner's ("SSA") final decision denying her disability insurance benefits. For the reasons set forth below, the Administrative Law Judge's ("ALJ") decision is **vacated and remanded** for further administrative proceedings.

## I.     BACKGROUND

Claimant filed applications for disability insurance benefits on January 29, 2019 (Title II) and January 31, 2019 (Title XVI), respectively. (Administrative Record ("AR") 16.) The ALJ initially denied Claimant's claim on May 5, 2021, (AR 28), and the Appeals Council denied her request for review, (AR 1). Claimant appealed to this Court, (AR 3182), which granted SSA's and Claimant's joint motion to vacate the decision and remand for further administrative action, (AR 3196).

In the ALJ's subsequent decision, the ALJ determined Claimant had the severe impairments of degenerative disc disease, dysfunction major joints, fibromyalgia, and

---

[1]     As a matter of practice, the Court refers to Claimant as such and, at most, by her first name and last initial to protect her privacy.

breast cancer.  (AR 3105.)  The ALJ evaluated the medical evidence and testimony and concluded that Claimant was not disabled.  (AR 3109–17.)  In doing so, the ALJ determined that Claimant had the Residual Functional Capacity ("RFC") to perform light work with the following limitations:

> [T]he claimant can lift and/or carry 20 pounds occasionally and 10 pounds frequently.  She can stand and/or walk 4 hours and sit 6 hours in an 8-hour workday.  She can occasionally climb ladders/scaffolds and occasionally stoop.  The claimant can frequently climb ramps/stairs, balance, kneel, crouch and crawl.  She should avoid even moderate exposure to hazards. In addition, the claimant may require a cane for ambulation over rough, uneven surfaces or when experiencing a flare in fibromyalgia.

(AR 3109.)  The ALJ rejected the more extensive limitations identified by Claimant's treating physician, Dr. Harris Khakwani, after determining that his opinion was not persuasive, (AR 3113–15), and rejected Claimant's testimony concerning her pain and impairments based on his review of medical records, (AR 3109–13).

Based on the RFC formulation and the testimony of the Vocational Expert ("VE") at the hearing, the ALJ found that Claimant could perform jobs such as telephone quotation clerk and account clerk, such that she was not under a disability as defined in the Social Security Act (the "Act").  (AR 3116-17.)  The ALJ thus denied Claimant's claim, and she then appealed to this Court.

## II.    LEGAL STANDARD

The Court reviews only those issues raised by the party challenging the decision.  *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001).  The Court may set aside SSA's disability determination only if it is not supported by substantial evidence or is based on legal error.  *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).  "Substantial evidence is more than a mere scintilla but less than a preponderance" of evidence and is such that "a reasonable mind might accept as adequate to support a conclusion."  *Id.* (quoting *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)).  To determine whether substantial evidence supports a decision, the Court must consider the record as a whole.  *Id.*  But if "the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's

decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to SSA at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled, and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe medically determinable physical or mental impairment." *Id.* § 404.1520(a)(4)(ii). If not, the claimant is not disabled, and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. *See id.* § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. *Id.* At step four, the ALJ assesses the claimant's RFC—the most the claimant can do with their impairments—and determines whether the claimant is still capable of performing past relevant work. *Id.* § 404.1520(a)(4)(iv). If so, the claimant is not disabled, and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where he or she determines whether the claimant can perform any other work that exists in "significant numbers in the national economy" based on the claimant's RFC, age, education, and work experience. *Id.* § 404.1520(a)(4)(v); *Tackett*, 180 F.3d at 1099. If so, the claimant is not disabled. *Id.*

**III.    DISCUSSION**

Claimant asserts that the ALJ's RFC finding was not supported by substantial evidence because the ALJ (a) improperly discounted Dr. Khakwani's opinion regarding the limitations caused by Claimant's impairments and (2) erred by failing to provide sufficient reasons for rejecting Claimant's testimony about the limitations she suffered due to her fibromyalgia symptoms. (Doc. 18 at 1.) The Court considers each argument in turn.
///

**A.      Dr. Khakwani's Medical Opinion**

Medical records show that Dr. Khakwani treated Claimant from April 2016, (AR 878–82), through August 2023, (AR 4071–96), seeing her at least 30 times over that period. (AR 782–931, AR 2650–2817, AR 3983–4113.)  Dr. Khakwani completed three relatively similar physical assessments of Claimant in which he identified significant exertional limitations stemming from her fibromyalgia, low back pain, and/or lumbar radiculopathy, including that she would often or constantly suffer symptoms severe enough to interfere with her ability to perform simple work-related tasks, would need to take unscheduled 15-20-minute breaks during an 8-hour workday every one-to-two hours per day, could walk no more than two blocks, could sit and stand no more than two hours per day each, could lift no more than 10 pounds occasionally, had limitations in the use of her hands, and would be absent from work more than four times a month.  (*See* AR 3113–14 (summarizing AR 522–23, 3097–98, 3488–89).)  He also completed a mental capacity assessment in which he

> opined, in part, the claimant has moderate limitation in ability to follow one-to-two step oral instructions to carry out a task, in the ability to sequence multi-step activities, in the ability to work at an appropriate and consistent pace, or complete tasks in a timely manner, and marked limitation in the ability to sustain an ordinary routine and regular work attendance, and in the ability to work a full day without needing more than the allotted number or length of rest periods during the day.

(AR 3114 (summarizing AR 3490–92).)  Finally, he submitted a letter noting that it would be difficult for Claimant to maintain employment due to her medical problems and the side effects of her pain medications.  (AR 4115.)

The ALJ discounted Dr. Khakwani's opinions by finding that they were not supported by his own treatment records and were inconsistent with medical records from other providers showing that Claimant improved with treatment and suffered minimal side effects from her medications.  (AR 3114–15.)

**1.      Legal Standard for Evaluating Medical Source Evidence**

Under current SSA regulations, treating or examining physician opinions are not

entitled to deference over other medical sources. *Woods v. Kijakazi*, 32 F.4th 785, 791–92 (9th Cir. 2022). An ALJ will instead evaluate every medical source based on several factors, the "most important" of which are "supportability" and "consistency." *Id.* at 791 (citations omitted). "Supportability means the extent to which a medical source supports the medical opinion by explaining the relevant . . . objective medical evidence," and consistency "means the extent to which a medical opinion is consistent . . . with the evidence from other medical sources and nonmedical sources in the claim." *Id.* at 791–92 (alterations in original) (quotation marks omitted). An ALJ "must articulate . . . how persuasive [he or she] finds all of the medical opinions from each doctor or other source and explain how [he or she] considered the supportability and consistency factors in reaching these findings." *Id.* at 792 (first alteration in original) (citation and quotation marks omitted). "Under the revised regulations, an ALJ need only provide '*an* explanation supported by substantial evidence.'" *Kitchen v. Kijakazi*, 82 F.4th 732, 740 (9th Cir. 2023) (emphasis added) (quoting *Woods*, 32 F.4th at 792).

In her Opening Brief, Claimant does not specifically argue that the ALJ failed to properly evaluate Dr. Khakwani's opinions under either the supportability or consistency factors. She does, however, (a) cursorily dispute the portion of the ALJ's decision discounting Dr. Khakwani's opinion as unsupported, (Doc. 18 at 11), (b) argue that Dr. Khakwani's opinion was consistent with his own treatment records, (*id.* at 13–14), and (c) argue that his opinion was consistent with other medical records, (*id.* at 12–15). In her Reply Brief, Claimant briefly addresses the consistency factor, arguing that the ALJ failed to consider "physical deficits in the overall medical record when evaluating the consistency of Dr. Khakwani's opinion," including "abnormal objective findings" from other medical sources. (Doc. 23 at 4.)

## 2. Supportability

Claimant's challenge to the ALJ's discounting of Dr. Khakwani's opinion based on the supportability factor fails. In this case, Dr. Khakwani filled out four checkbox assessments and prepared a short letter setting forth his conclusions without adequate

1    explanation.  (AR 522–23, 3097–98, 3488–89, 3490–92, 4115.)  The Ninth Circuit has

2    "accepted the discounting of a medical opinion set forth in a checkbox form with little to

3    no explanation."  *Kitchen*, 82 F.4th at 740–41.

4         Moreover, the ALJ noted that Dr. Khakwani's "own treatment records are not

5    consistent with the degree of limitations proposed in his assessments."  (AR 3114.)  The

6    medical records cited by the ALJ and the additional treatment records prepared by Dr.

7    Khakwani show Claimant as appearing normal, experiencing no side effects of medication,

8    being alert with a normal mood, and otherwise not experiencing symptoms that would

9    explain the limitations set forth in Dr. Khakwani's assessments and letter.  (AR 788–89,

10    804–805, 815–16, 824–25, 830–32, 837–38, 849–51, 857–58, 863–64, 868–70, 2655–56,

11    2675, 2684–85, 2713–14, 2717–18, 3499–3500, 3506–07, 4013–15, 4038–39, 4090–92.)

12    *See Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (explaining that similar

13    findings are "not the sort of description . . . one would expect to accompany a finding that

14    [a claimant] was totally disabled.").  Accordingly, substantial evidence supports the ALJ's

15    supportability analysis.

16         **3.    Consistency**

17         With respect to the consistency factor, the ALJ concluded that "Dr. Khakwani's

18    opinion is not supported by other medical records," citing records from three of Claimant's

19    treatment providers—AZ Pain Doctors, Orthopedic Institute of the West, and Integrated

20    Medical Services—to establish that Claimant "received benefit from medications, hip

21    surgery, carpal tunnel release, as well as injections and ablations," including increases to

22    her functioning and quality of life without significant side effects, opioid withdrawal, or

23    excessive sleepiness.  (AR 3114–15.)  Claimant asserts that the ALJ ignored certain "highly

24    probative evidence" in the medical records and instead cherry-picked records to support

25    this finding.  (Doc. 18 at 15–16.)

26         The ALJ did not cherry-pick evidence in concluding that Dr. Khakwani's opinion

27    concerning medication side effects—including that Claimant suffered brain fog and

28    clouded judgment and memory—was inconsistent with the medical records.  Rather, as the

ALJ explained, (AR 3115), the record is replete with records spanning the duration of her care establishing that she generally denied significant side effects as a result of her medications, (AR 524, 543, 565, 573, 581, 603, 611, 619, 630, 932, 940, 948, 956, 964, 1028, 1036, 1092, 1100, 1109, 1118, 1479, 1487, 1496, 1505, 1553, 1571, 1582, 1592, 2820, 3055, 3675, 3686, 3698, 4161), and that she did not demonstrate signs of opioid withdrawal or excessive sleepiness, (AR 529, 536, 543, 555, 563, 565, 571, 579, 587, 609, 618, 625, 636, 938, 946, 954, 963, 971, 1034, 1050, 1058, 1066, 1074, 1082, 1090, 1098, 1116, 1123, 1469, 1477, 1485, 1494, 1503, 1510, 1559–60, 1568, 1589, 2827, 3044, 3053, 3062, 3684, 3696, 3707, 3718, 3730, 3741, 3752, 3764, 3775, 3787, 3798, 3809, 3820, 3831, 3842, 3853, 3864, 3876, 3886–87, 4168, 4188). Accordingly, the ALJ's inconsistency finding regarding Dr. Khakwani's non-exertional limitations opinion is supported by substantial evidence.

The ALJ's inconsistency finding with respect to Dr. Khakwani's exertional limitations opinion, however, is not. While the ALJ cited multiple records that generically state that Claimant experienced improvement, those same records make clear that Claimant continued to experience significant levels of pain, notwithstanding the treatment she was receiving, and was severely limited in her daily activities. Indeed, the majority of the records from Arizona Pain Doctors between February 2018 and October 2023 show: (1) Claimant had pain in her legs, back, hip, neck, and arms at levels no less than 5 (and usually higher) on a scale of 10, with intermittent episodes of 10 out of 10 pain; (2) treatments generally only improved her functioning and quality of life by 30%; (3) the pain was constant; and (4) it impacted her daily activities. (AR 524–695, 932–81, 1028–29, 1461–511, 1551–616, 2818–39, 3035–80, 3674–982, 4159–204.) The ALJ largely ignored these records; an ALJ, however, may not ignore evidence that contradicts its findings. *See Diedrich v. Berryhill*, 874 F.3d 634, 643 (9th Cir. 2017) (citing *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984)); *see also Orn*, 495 F.3d at 630 ("[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" (citation omitted)).

SSA argues that the ALJ correctly addressed the consistency factor because, in addition to the generic records discussed above, the ALJ cited certain records showing an "80% improvement in back and hip pain from radiofrequency ablation and injection therapy." (Doc. 22 at 7–8.) These records, however, reflect that notwithstanding the treatments Claimant received, she continued to suffer pain in different parts of her body with an average pain score generally at 6 out of 10, endured decreased activities of daily life, and benefited from only temporary relief. (AR 2820, 3037, 3686, 3698.) The medical records as a whole show that while Claimant experienced some improvements with treatment, she continued to suffer high levels of pain with accompanying impairments, (AR 524, 531, 543, 550–51, 558, 933, 941, 949, 1029, 1037, 1045, 1464, 1472, 1480, 1554, 1562–63, 1572, 2820, 3037, 3046, 3055, 3677, 3688, 3700, 4163, 4173, 4182), which is consistent with the nature of fibromyalgia. *See Revels v. Berryhill*, 874 F.3d 648, 663 (9th Cir. 2017) ("[T]he symptoms of fibromyalgia 'wax and wane,' and a person may have 'bad days and good days.'" (quoting SSR 12-2P)). Accordingly, the ALJ's finding that Dr. Khakwani's physical-limitations opinion was inconsistent with other medical records is not supported by substantial evidence.

### B.    Claimant's Symptom and Limitations Testimony

Claimant testified about her symptoms and limitations at both the initial hearing held April 21, 2021, and the subsequent hearing held on September 26, 2023. At the 2021 hearing, she testified that she suffered "localized pain pretty much all the time in certain areas of [her] body" and in "certain areas . . . one day it can hurt and the next day it doesn't." (AR 43.) She described significant pain in her back, feet, neck, shoulders, hips and wrists, (AR 43–46), and testified that she was limited in her activities because she could not stand for longer than 30 minutes, could not walk for more than an hour due to pain in her back and feet, (AR 46), and could not sit for longer than an hour because it would cause her "tailbone and lower back to act up," (AR 47). She also confirmed that she would miss more than four days of work in a month due to her medical situation, including "the achiness from the fibromyalgia." (AR 48.)

At the 2023 hearing, Claimant testified that "[c]ertain things have gotten worse," including pain, tingling and numbness in her legs and feet, which get worse with sitting or standing for long periods of time.  (AR 3133–34.)  She also testified that her fibromyalgia regularly causes her pain:

> I get horrible pain in between my shoulder blades, hand, [and] . . . feet.  I
> have good days and bad days where . . . one day I can be . . . better than the
> day before.  And I can have three or four days where [the fibromyalgia] is
> totally affecting me, and I'm really not able to do anything . . . about my pain.

(AR 3135.)  She further testified that while she obtained some relief from treatment, she "did not get much relief" from her steroid injections, the nerve burn she received in her lower back helped in her neck but not in her back, and her approach to treatment was that she was "willing to do anything to try to get any kind of relief [she could]."  (AR 3136.)  In discussing her impairments, she testified that if she stands for more than fifteen minutes she experiences "shooting pains in [her] feet," her "back will start to hurt," and "one hip in particular starts to hurt."  (AR 3138–39.)  She also testified that she can only sit upright for "10 to 15 minutes" because of "shooting pains," "throbbing and burning in [her] lower back area," and "tingling and numbness in [her] feet."  (AR 3141.)

The ALJ found that Claimant's "statements concerning the intensity, persistence, and limiting effects of [her] symptoms [were] not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision."  (AR 3110.)  Claimant argues the ALJ did not provide legally sufficient grounds supported by substantial evidence to discount her symptom testimony.  (Doc. 18 at 17–20.)

**1.  Legal Standard for Evaluating Claimant Testimony**

If the ALJ finds that a claimant "presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged," and that there is "no evidence of malingering," the ALJ may "reject [her] testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so."  *Revels*, 874 F.3d at 655 (citation omitted).  "This is not an easy requirement to meet:  The clear and convincing standard is the most demanding

1   required in Social Security cases." *Id.* (citation omitted).  "If the ALJ fails to provide
2   specific, clear, and convincing reasons for discounting the claimant's subjective symptom
3   testimony, then the ALJ's determination is not supported by substantial evidence."
4   *Ferguson v. O'Malley*, 95 F.4th 1194, 1199 (9th Cir. 2024).  An ALJ, however, is "not
5   required to believe every allegation of disabling pain."  *Smartt v. Kijakazi*, 53 F.4th 489,
6   499 (9th Cir. 2022) (quotation marks omitted).  "The standard isn't whether [the] court is
7   convinced, but instead whether the ALJ's rationale is clear enough that it has the power to
8   convince." *Id.*

9                        **2.    Claimant's Testimony**

10          The Court concludes the ALJ's reasons for discounting Claimant's testimony are
11  not clear and convincing when reviewing the record as a whole and in light of the caselaw
12  applicable to claims of fibromyalgia.  In *Revels*, the Ninth Circuit explained that in cases
13  involving fibromyalgia, the RFC analysis must account for the unique nature of the disease:
14  "In evaluating whether a claimant's residual functional capacity renders them disabled
15  because of fibromyalgia, the medical evidence must be construed in light of fibromyalgia's
16  unique symptoms and diagnostic methods . . . .  The failure to do so is error."  874 F.3d at
17  662.  Fibromyalgia is evaluated "entirely on the basis of patients' reports of pain and other
18  symptoms." *Benecke v. Barnhart*, 379 F.3d 587, 590 (9th Cir. 2004).

19          In rejecting Claimant's symptom and limitations testimony, the ALJ relied on
20  records showing that Claimant received benefits from treatment, including records the ALJ
21  cited in discounting Dr. Khakwani's medical opinion.  (AR 3111-13.)[2]  "[T]o reject a
22  claimant's testimony, it is not enough for [an] ALJ to show that the pain was responsive to

---

[2]    SSA asserts that Claimant did "not challenge the ALJ's findings regarding her improvement with treatment" in her opening brief, claiming that such an argument is therefore waived.  (Doc. 22 at 6.)  The Court disagrees.  "[I]t is claims that are deemed waived or forfeited, not arguments." *United States v. Kirilyuk*, 29 F.4th 1128, 1135 (9th Cir. 2022) (alteration in original) (citation omitted).  Here, Claimant challenged the ALJ's reasons for rejecting her symptom testimony, which necessarily include the ALJ's reliance on her supposed improvement with treatment.  (Doc. 18 at 18 (arguing that the ALJ's decision "does not provide [specific, clear and convincing] reasons" to discount Claimant's testimony); *id.* at 19 (challenging the ALJ's assertion that Claimant's testimony was not "entirely consistent with the medical evidence and other evidence in the record for the reasons *explained in this decision*" (emphasis added) (citation omitted)).  Accordingly, there is no waiver.

treatment; the ALJ must show that the pain was controlled, i.e., no longer debilitating." *Lopez v. Colvin*, 194 F. Supp. 3d 903, 911 (D. Ariz. 2016) (citation omitted).  The ALJ committed legal error here because the medical records, taken as a whole, show that Claimant remained in significant pain with significant impairments to her activities of daily living notwithstanding her treatments.  *See Jones v. Comm'r of Soc. Sec. Admin.*, 2024 WL 4203141, at *4 (D. Ariz. 2024) ("The ALJ committed legal error using [claimant's] responsiveness to treatment as a factor for discounting her symptom testimony without finding her pain was controlled.").

The ALJ's reliance on records showing that Claimant "generally presented in no acute distress during examinations," (AR 3111), to reject her symptom testimony is also misplaced.  The medical records show that over a period of more than five years, Claimant routinely reported that regardless of the pain she experienced at appointments, at other times she suffered a "worst pain rating" of 10.  (AR 524, 531, 543, 550–51, 558, 933, 941, 949, 1029, 1037, 1045, 1464, 1472, 1480, 1554, 1562–63, 1572, 2820, 3037, 3046, 3055, 3677, 3688, 3700, 4163, 4173, 4182.)  Taken as a whole, the records show that Claimant sometimes was not in acute distress and sometimes suffered extreme pain, which is consistent with the nature of fibromyalgia.  *See Revels*, 874 F.3d at 663; Social Security Ruling, SSR 12-2p; Titles II and XVI:  Evaluation of Fibromyalgia, 77 Fed. Reg. 43640, 43640 (July 25, 2012) ("For a person with [fibromyalgia], we will consider a longitudinal record whenever possible because the symptoms of [fibromyalgia] can wax and wane . . . ."); *see also Albertson v. Comm'r of Soc. Sec. Admin*, 2022 WL 16752284, at *2 (D. Ariz. 2022) (finding that lack of acute distress did not contradict the claimant's testimony reporting "severe pain outside of the office environment" given the episodic nature of fibromyalgia symptoms), *report and recommendation adopted*, 2022 WL 16745043 (D. Ariz. 2022).  The Court thus holds that the ALJ did not provide specific, clear and convincing reasons for discounting Claimant's symptom and limitations testimony supported by substantial evidence.

///

1    **C.    Remand for Harmful Error**

2          Not every error requires vacating an ALJ's decision.  If an "error was harmless,

3    meaning it was inconsequential to the ultimate nondisability determination," the Court may

4    affirm.  *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020) (quotation marks omitted); *see*

5    *also Buck v. Berryhill*, 869 F.3d 1040, 1048 (9th Cir. 2017) ("The Court may not reverse

6    an ALJ's decision on account of a harmless error.").

7          The ALJ's errors in discounting both Dr. Khakwani's opinion regarding Claimant's

8    limitations and Claimant's symptom and limitations testimony were not harmless.  If some

9    or all of the limitations set forth in Dr. Khakwani's opinion or Claimant's testimony had

10   been incorporated into the RFC—including that Claimant would have to take frequent

11   breaks or miss four or more days of work per month due to her impairments—Claimant

12   would have been found disabled based on the testimony of the VE.  (AR 3148 (agreeing

13   that Claimant could not work as a telephone quotation clerk or account clerk if she "needed

14   to change positions every 15 to 20 minutes," was "off task . . . more than about 10 percent

15   of the time," or absent "in excess of one day per month on [an] extended basis")).  Because

16   the ALJ committed harmful error in discounting Dr. Khakwani's opinion based on the

17   consistency factor and in discounting Claimant's symptom and limitations testimony, the

18   Court vacates the decision denying Claimant benefits.

19         Ordinarily, if the Court reverses an ALJ's decision, the Court remands to SSA for

20   further proceedings.  *Garrison v. Colvin*, 759 F.3d 995, 1019 (9th Cir. 2014).  "The

21   decision whether to remand a case for additional evidence, or simply to award benefits[,]

22   is within the discretion of the court."  *Revels*, 874 F.3d at 668 (alteration in original)

23   (citation omitted).  Here, Claimant asks the Court to remand for an immediate award of

24   benefits in conclusory fashion, (Doc. 18 at 21; Doc. 23 at 6), and without reference to the

25   "credit-as-true rule," which only applies if (1) the ALJ "failed to provide legally sufficient

26   reasons for rejecting evidence, whether claimant testimony or medical opinion"; (2) the

27   "record has been fully developed," such that there are no "outstanding issues that must be

28   resolved before a determination of disability can be made" and "further proceedings would

not be useful"; and (3) "if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Washington v. Kijakazi*, 72 F.4th 1029, 1041 (9th Cir. 2023) (citations omitted).

This is not an instance in which the credit-as-true rule applies. Further proceedings would be useful for the ALJ to reevaluate the persuasiveness of Dr. Khakwani's opinion under the consistency factor and to consider Claimant's symptom and limitations testimony in formulating the RFC. Even after taking these steps, the ALJ might again decide on remand that Claimant is not disabled. Thus, the Court will remand to SSA for further administrative proceedings. *See Carlisle v. Comm'r of Soc. Sec. Admin.*, 2025 WL 406737, at *5 (D. Ariz. 2025).

Accordingly,

**IT IS ORDERED** that the decision of the ALJ is **vacated and remanded** for further administrative proceedings.

**IT IS FURTHER ORDERED** directing the Clerk to enter final judgment consistent with this Order and close this case.

Dated this 2nd day of April, 2025.

Honorable Sharad H. Desai
United States District Judge